UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SUSAN EACHUS, o/b/o Barry Kevin
Thompson (deceased),

    Plaintiff,

v.                                                 Case No: 2:16-cv-402-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is the Complaint (Doc. 1) filed on May 25, 2016. Counsel for the original Plaintiff Barry Kevin Thompson filed a Suggestion of Death and a Motion for Substitution of Parties (Doc. 23) on May 30, 2017. The Court allowed the requested substitution. (*See* Doc. 24). For purposes of this Opinion and Order, the Court will refer to Susan Eachus as "Plaintiff" and Barry Kevin Thompson as "Claimant."[1]

Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying a claim for disability and disability insurance benefits. Even though the parties failed to address the issue of whether all of the claims in this action survive the death of Mr. Thompson, the Court must consider whether all of the claims raised survive Mr. Thompson's death. *See* Fed. R. Civ. P. 25. The Court finds that a claim for disability insurance benefits survives the death of the claimant. *See Fowler v. Astrue*, No. 809-

---

[1] Susan Eachus is the sister of Barry Kevin Thompson. (*See* Doc. 23-2 at 1).

CV-1368T-27MAP, 2010 WL 454765, at *1 (M.D. Fla. Feb. 9, 2010). Thus, Plaintiff may proceed on her claim for disability insurance benefits.

Plaintiff also asserts a claim under supplemental security income. (*See* Doc. 19 at 1). Pursuant to 42 U.S.C. § 1383(b)(1)(A), generally a claimant's claim for supplemental security income extinguishes upon a claimant's death. *See also* 20 C.F.R. § 416.542(b)(1)-(4) (no benefits under supplemental security income may be paid to an estate of a deceased claimant unless to a surviving eligible spouse or eligible parent of a disabled or blind child). In this case, the Court finds that Plaintiff's claim for supplemental security income does not survive Mr. Thompson's death. Thus, the only remaining claim relates to judicial review of the Commissioner's decision as to disability and disability insurance benefits.

The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.     Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.     Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the

burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

B.     **Procedural History**

On May 24, 2011, Claimant filed an application for disability and for supplemental security income, asserting an onset date of August 14, 2010. (Tr. at 81, 82, 238-46). Claimant's applications were denied initially on August 2, 2011, and on reconsideration on September 14, 2011. (*Id.* at 81, 82, 103, 104). A hearing was held before Administrative Law Judge ("ALJ") Larry J. Butler on September 16, 2013. (*Id.* at 35-80). The ALJ issued an unfavorable decision on August 19, 2014. (*Id.* at 13-26). The ALJ found Claimant not to be under a disability from August 14, 2010, through the date of the decision. (*Id.* at 13).

On April 4, 2016, the Appeals Council denied Claimant's request for review. (*Id.* at 1-6). Claimant filed a Complaint (Doc. 1) in the United States District Court on May 25, 2016. This case is ripe for review.

C.     **Summary of the ALJ's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R.

---

[2] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

3

Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Claimant met the insured status requirements through December 31, 2013. (Tr. at 15). At step one of the sequential evaluation, the ALJ found that Claimant had not engaged in substantial gainful activity since August 14, 2010, the alleged onset date. (*Id.*). At step two, the ALJ found that Claimant suffered from the following severe impairments:

> degenerative disc disease of the lumbar spine status post fusion surgery; status post remote cervical fusion in 1996; thoracic degenerative disease; and isolated seizures possibly related to alcohol abuse (20 CFR §§ 404.1520(c) and 416.920(c)).

(*Id.*). At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. at 18). At step four, the ALJ determined that Claimant has the residual functional capacity ("RFC") to perform a wide range of light work as follows:

> the claimant can lift and carry, and push and pull, 20 pounds occasionally and 10 pounds frequently. The claimant can sit for 6 hours, and can stand and/or walk for 6 hours, over the course of an 8-hour workday. The claimant can frequently climb ramps and stairs but can never climb ladders, ropes and scaffolds. The claimant can frequently stoop, kneel, crouch and crawl. The claimant must avoid concentrated exposure to vibration, and even moderate exposure to hazards such as machinery and heights. The claimant has no manipulative, visual or communicative limitations, and no mental job-related limitations.

(*Id.*). The ALJ determined that Claimant was not capable of performing his past relevant work as an aluminum/metal fabricator and installer. (*Id.* at 24). After considering Claimant's age,

4

education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Claimant can perform. (*Id.*). The ALJ concluded that Claimant was not under a disability from August 14, 2010, through the date of the decision. (*Id.* at 25).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

On appeal, Plaintiff raises three (3) issues. As stated by Plaintiff, they are:

1) The ALJ committed reversible error by failing to provide a legally sufficient basis for rejecting the opinions of [Claimant's] treating pain physicians, in violation of SSR 96-2p; 20 C.F.R. §§ 404.1527(d), 416.927(d).

2) The ALJ committed harmful error when he found [Claimant's] mental impairment was non-severe and trivial within the meaning of 20 C.F.R. §§ 404.1521(a), 416.921(a).

3) There is sufficient evidence of bias, or at a minimum the appearance of compromised decision-making, on the part of ALJ Butler, to warrant remand, disqualification, and re-assignment to a different ALJ.

(Doc. 19 at 8, 12, 14). The Court will address each issue in turn.

### A. Weight of Treating Physicians' Opinions

Plaintiff argues that the ALJ erred in affording little weight to the opinion of the treating psychiatrist from Lee Mental Health Center and the opinion of Velimir A. Micovic, M.D., Claimant's pain management physician. (*Id.* at 8-11). The Commissioner responds that the ALJ properly evaluated these treating physicians' opinions when affording them little weight. (Doc. 21 at 9-15).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir.

2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit concluded that good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

The Court will address the weight afforded the medical records from Lee Mental Health Center and Dr. Micovic in turn.

1. **Treating Psychiatrists at Lee Mental Health Center**

Plaintiff claims that the ALJ erred in affording little weight to the opinions of treating psychiatrists from Lee Mental Health Center. (Doc. 19 at 9). Specifically, Plaintiff asserts that the ALJ did not afford appropriate weight to a Questionnaire as to Mental Residual Functional Capacity completed on August 1, 2013 by a Lee Mental Health physician, assessing Claimant with marked to extreme limitations in many functional areas that would preclude work activity. (*Id.*; Tr. at 953-56). The Commissioner argues that the ALJ considered the records from Lee Mental Health Center, including the Questionnaire, and supported his decision to afford little weight to the psychiatric opinion. (Doc. 21 at 10-11).

a. **Treatment Records and Opinions from Lee Mental Health**

The following is a summary of the records that Plaintiff cites from Lee Mental Health Center dating back to July 2011, as well as other later records. (Doc. 19 at 9; Tr. at 527, 529).

7

Claimant went to Lee Mental Health Center on July 6, 2011.  (Tr. at 528-29).  Rosario C. Alcera, M.D. found Claimant to be well-groomed; alert and oriented in all spheres; cooperative; normal in behavior and speech; euthymic; full and appropriate in affect; goal directed in thought process; without suicidal or homicidal ideations; and fair in insight and judgment.  (*Id.* at 528).  Dr. Alcera prescribed medication for Claimant.  On July 18, 2011, Dr. Alcera treated Claimant again.  (*Id.* at 526).  Dr. Alcera found Claimant to be alert and oriented in all spheres; cooperative; psychomotor retardation; slow speech; anxious; goal directed; having no suicidal or homicidal ideations; and fair insight and judgment.  (*Id.*).  Again, Dr. Alcera prescribed medications for Claimant.  (*Id.* at 527).

  Plaintiff next cites to a visit to Lee Mental Health on May 29, 2012.  (Doc. 19 at 9; Tr. at 727).  At this visit, Amanda Camara, M.D. found Claimant to have a fund of knowledge; judgment and insight to be good; thoughts coherent, logical and goal directed; no suicidal or homicidal thoughts; mood euthymic; oriented in all spheres; speech and psychomotor to be normal; and his perceived progress toward symptoms control to be better.  (Tr. at 728-29).  On October 18, 2012, Claimant saw Normal Kruedelbach, Ph.D. for a therapy session.  Dr. Kruedelbach found Claimant somewhat improved.  (*Id.* at 768).  On November 7, 2012, Claimant returned to Lee Mental Health Center and saw Michael Whitman, M.D.  (*Id.* at 765-67).  Dr. Whitman found Claimant well-groomed, having a fund of knowledge, judgment and insight to be good; thoughts coherent, logical and goal directed; no suicidal or homicidal thoughts; mood depressed; speech and psychomotor normal; and his perceived progress toward symptom control better.  (*Id.* at 764-66).

  Plaintiff next cites to the records from July 8, 2013.  (Doc. 19 at 9).  On this visit, Claimant saw Marc Weinbaum, M.D.  (Tr. at 940).  Dr. Weinbaum found Claimant groomed;

impaired short term memory; impaired long term memory; ideas of hopelessness; fund of knowledge; judgment and insight fair; thoughts coherent, logical and goal directed but senses movement in the periphery of Claimant's vision, but never actually sees anything; suicide and homicide ideation with thoughts of killing his sister and brother-in-law; depressed, constricted, and despairing; angry; ideas of worthlessness; oriented in all spheres; normal speech; psychomotor to be restlessness; and his perceived progress toward symptom control was worsening. (Tr. at 936-38).

On August 1, 2013, a physician completed a Questionnaire as to Mental Residual Functional Capacity. (*Id.* at 953-56).[3] The physician found Claimant to have extreme or marked limitations in all areas with the exception of ability to maintain personal appearance and hygiene where the doctor found Claimant to have moderate limitations. (*Id.* at 953-55). Further, the physician found Claimant's condition would deteriorate if Claimant was placed under stress. (*Id.* at 956).

### b. ALJ's Decision as to Lee Mental Health Physicians

In the decision, the ALJ discussed the records from Claimant's mental health treatment. (*Id.* at 16-17). The ALJ noted that Claimant had sporadic treatment at Lee Mental Health Center. (*Id.*). The ALJ noted that some symptoms were present but not consist throughout the records, such as psychomotor retardation and slow speech. (*Id.*). The ALJ noted that on October 2, 2012, Claimant had no psychological symptoms. (*Id.*). The ALJ found that Claimant's records show that his depression was better; no suicidal ideas; normal mood, memory, and affect; coherent and logical thoughts; and good insight and judgment. (*Id.*). The ALJ noted that Claimant was

---

[3] The physician's signature is illegible. (Tr. at 956).

depressed, but had no more serious symptoms. (*Id.*). Further, the ALJ noted that Claimant took care of his mother who suffered from dementia. (*Id.*).

The ALJ then discussed the more concerning findings in the July 8, 2013 records. (*Id.*). The ALJ noted that Claimant had impaired memory, ideas of hopelessness, and a sense of movement in the periphery of his vision. (*Id.*). The ALJ further noted that Claimant had thoughts of killing his sister, brother-in-law, and his wife, further noting that Claimant was depressed, with a constricted mood and affect. (*Id.*). The ALJ also noted that Claimant had ideas of worthlessness and despair. (*Id.*). After reviewing these records, the ALJ stated:

> [d]espite these rather frightening revelations, Dr. Weinbaum indicated that the claimant had no signs of psychosis and that he was not an immediate danger to self or others, but was 'promising to kill his sister, if he ends up destitute.' . . . Thus on [the] one date the claimant had a very serious exacerbation of symptoms including threats to kill family members; he was deemed not to be an immediate threat to himself o[r] others however (low risk).

(*Id.*). The ALJ found that the balance of the mental health treatment records showed limited symptoms and concluded that Claimant has a non-severe mental impairment when he is compliant with medication and treatment. (*Id.*).

The ALJ then compared the treatment records to the findings in the Questionnaire as to Mental Residual Functional Capacity. (*Id.*). The ALJ concluded that the treatment records "in no way support" the findings in the Questionnaire and, thus, gave this opinion little weight. (*Id.*). The ALJ further found that the physician placed checkmarks on a pre-printed form finding that Claimant had extreme or marked limitations in many areas without citing to objective evidence to support these findings. (*Id.* at 16-17). The ALJ also noted that the hand-written portion of the Questionnaire indicated that Claimant had too much stress in his life, but this additional comment is insufficient to support the "wholesale extreme and marked limitations in every single area other than [the] ability to maintain personal appearance and hygiene." (*Id.* at

17).  The ALJ also reasoned that it is hardly imaginable that a person with these extreme limitations would be able to care for an ill parent.  (*Id.*).  Further, the ALJ determined that "one would expect" a person with these limitations to have more than a handful of visits for counseling and medication and also noted that Claimant had no hospitalizations for his mental impairments.  (*Id.*).

### c. Analysis

Upon careful consideration of the treatment records, the opinions of the treating mental health professional as well as the ALJ's analysis of these records in the decision, the Court finds the ALJ's decision is supported by substantial evidence.  In this case, the ALJ thoroughly considered the records from the mental health providers and summarized their findings.  (*Id.* at 16-17).  Further, the ALJ articulated good reasons why he afforded little weight to the Questionnaire as to Mental Residual Functional Capacity.  (*Id.*).  First, the ALJ noted that even when Claimant's treatment records showed "rather frightening revelations" such as Claimant having thoughts of harming others, Dr. Weinbaum found that Claimant showed no signs of psychosis and was not in immediate danger to himself or others.  (*Id.* at 16).  Second, the ALJ properly noted that Questionnaire indicated that Claimant had extreme or marked limitations in almost all areas, yet the objective treatment records did not support these extreme limitations.  (*Id.*).  The physician completing the Questionnaire failed to cite to treatment records to support these extreme limitations and Plaintiff also failed to cite to treatment records that supported these extreme limitations.  The ALJ's determination that the treating physicians' opinions were not bolstered by the evidence and were conclusory or inconsistent with the actual treatment notes is supported by substantial evidence.  Thus, the Court finds that good cause exists to afford the treating mental health professionals' opinions little weight.  The Court also finds that the ALJ did

11

not err in affording little weight to the opinions of the treating mental health providers from Lee Mental Health.

### 2. Weight Afforded Dr. Micovic's Opinion

Plaintiff argues that the ALJ erred in affording portions of Dr. Micovic's opinion little weight. (Doc. 19 at 10). Specifically, Plaintiff claims that the ALJ erred in failing to adopt the physical limitations found by Dr. Micovic in a Physical Capacity Assessment. (*Id.*). The Commissioner contends that the ALJ properly afforded portions of Dr. Micovic's opinion little weight. (Doc. 21 at 14).

Plaintiff asserts that Claimant regularly saw Dr. Micovic from February 2011 through 2013. (Doc. 19 at 11). In addition, Plaintiff states that Claimant underwent two major spinal surgeries, a lumbar fusion, and cervical anterior cervical discectomy during the relevant period. (*Id.*). Without citation to objective medical evidence, Plaintiff claims that these procedures provide support for Dr. Micovic's opinion and are not negated by the fact that a few of Claimant's physical examinations were unremarkable. (*Id.*). The Commissioner claims that Plaintiff attempts to reweigh the evidence and the fact Plaintiff disagrees with the ALJ's decision does not mean that the decision is unsupported by substantial evidence. (Doc. 21 at 15).

#### a. Dr. Micovic's Opinion

On August 2, 2013, Dr. Micovic completed a Physical Capacity Evaluation. (Tr. at 958-59). Dr. Micovic determined that Claimant was capable of the following: (1) able to walk one hour at a time in an 8-hour workday and walk a total of two hours throughout the day; (2) able to sit for two hours at a time in an 8-hour workday and sit for six hours total throughout the day; (3) can lift 11-20 pounds occasionally; (4) can use hands for simple grasping, pushing, and pulling, and can use feet for repetitive movements; (5) is unable to bend, squat or crawl, but is able to

climb occasionally; and (6) is able to reach over shoulder level. (*Id.*). Dr. Micovic opined that these limitations were effective as of September 15, 2008. (*Id.* at 959). Dr. Micovic also added a handwritten note that "for more precise limitations[,] patient may [need] a functional capacity test[]." (*Id.*).

### b. ALJ's Decision as to Dr. Micovic

The ALJ afforded little weight to portions of Dr. Micovic's Physical Capacity Evaluation. (*Id.* at 21). The ALJ noted that Dr. Micovic indicated in his remarks that for a more precise description of Claimant's limitations, a functional capacity examination would be required. (*Id.*). The ALJ also noted that the pre-printed form required Dr. Micovic to check boxes and these checkmarks as to Claimant's alleged limitations were not well supported by the evidence of record, including the contrary findings of full motor strength, intact sensation, normal reflexes, and good results from prior surgeries. (*Id.*). Further, Dr. Micovic opined that these limitations existed as of September 15, 2008, yet there were no treatment records from that time period to document these alleged limitations. (*Id.*).

Moreover, the ALJ did not discount Dr. Micovic's opinion entirely. (*Id.*). The ALJ gave significant weight to Dr. Micovic's opinion that Claimant had no limitations on the use of his feet for repetitive movements; had the ability to reach above the shoulder; had no limitations as to grasping, pushing or pulling, or fine manipulation; and was able to lift 11-20 pounds occasionally. (*Id.*).

### c. Analysis

Upon consideration of the treatment records, the opinion of Dr. Micovic, and the ALJ's analysis of these records in the decision, the Court finds the ALJ's decision is supported by substantial evidence. In this case, the ALJ thoroughly considered Dr. Micovic's records and

summarized their findings. (*Id.* at 19-21). Further, the ALJ articulated good reasons why he afforded little weight to portions of Dr. Micovic's opinion. (*Id.* at 21). First, the ALJ noted that Dr. Micovic's handwritten comments indicated that further testing would be appropriate to determine Claimant's precise functioning. (*Id.*). Second, the ALJ noted that Dr. Micovic checked boxes on a pre-printed form, but did not support these findings with references to medical evidence in the record. (*Id.*). Third, the ALJ cited to medical records that do not support the limitations found by Dr. Micovic. (*Id.*). Fourth, the ALJ noted that Dr. Micovic opined that these limitations were said to exist since September 2008, but no medical records from that time period were cited in support that opinion. (*Id.*). Finally, even though the ALJ did not agree with some findings of Dr. Micovic, the ALJ did adopt the findings that he determined were supported by the record. (*Id.*). Substantial evidence supports the ALJ's determination that portions of Dr. Micovic's opinion was not supported by evidence of record. Thus, the Court finds that good cause exists to afford portions of Dr. Micovic's opinion little weight. The Court finds that the ALJ did not err in affording little weight to portions of Dr. Micovic's opinion.

  **B.**  **Consideration of Severity of Impairments**

Plaintiff argues that the ALJ erred in failing to find Claimant's mental impairments severe at step two of the sequential evaluation. (Doc. 19 at 12). The Commissioner contends that the substantial evidence supports the ALJ's decision that Claimant's mental impairments were not severe. (Doc. 21 at 6-8).

At step two of the sequential evaluation, the severity of a claimants impairments is analyzed. At this step, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d

1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

In the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Rather, the ALJ is required to consider a claimant's impairments in combination, whether severe or not. *Id.*

> A severe impairment is an impairment or combination thereof that significantly limits the claimant's physical or mental ability to do basic work activities. . . . The determination of whether the claimant suffers from a severe impairment acts as a filter. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Thus, while a claim is denied if the claimant does not suffer from a severe impairment, the finding of any severe impairment, regardless of whether it qualifies as a disability or results from a single impairment or combination thereof, is sufficient to satisfy the second step of the SSA's sequential analysis. *Id.* Nonetheless, beyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling.

*Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-42 (11th Cir. 2014) (internal citations omitted). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison*, 814 F.2d at 588).

In this case, the ALJ found at step two that Claimant had the severe impairments of degenerative disc disease of the lumbar spine status post fusion surgery; status post remote

cervical fusion in 1996; thoracic degenerative disease; and isolated seizures possibly related to alcohol abuse. (Tr. at 15). Thus, even if the ALJ erred in finding that Claimant's mental impairments were not severe, the ALJ satisfied the step two analysis by finding other impairments severe. *See Griffin*, 560 F. App'x at 841-42. Therefore, any error is harmless as long as the ALJ considered Claimant's severe impairments in combination with Claimant's non-severe impairments – including his alleged mental impairments. *Id.*

In the decision, the ALJ considered Claimant's mental impairments at the third step of the evaluation by finding that Claimant did not have an impairment, or *combination of impairments*, that met or medically equaled the severity of one of the listed impairments. (Tr. at 18). Further, when determining Claimant's RFC, the ALJ stated that he considered all of Claimant's symptoms that can reasonably be accepted as consistent with the objective medical evidence and other evidence of record. (*Id.*); *see Griffin*, 560 F. App'x at 842 (citing *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (noting a simple expression of the ALJ's consideration of the combination of impairments constitutes a sufficient statement of such findings). In addition to that statement, the ALJ also considered the medical records of evidence relating to Claimant's mental health. (Tr. at 15-18, 19).

The Court finds that even if the ALJ should have found Claimant's mental impairments severe, the ALJ fulfilled his responsibility to consider Claimant's mental impairments in the remaining steps of his disability analysis. *See Griffin*, 560 F. App'x at 842. Here, the ALJ considered Claimant's severe and non-severe impairments in combination. Therefore, the Court finds that even if the ALJ erred in his severity finding, the error was harmless because the ALJ found other severe impairments and considered all of Claimant's impairments in combination.

Plaintiff also claims that the ALJ erred in failing to consider work limitations associated with his mental impairments and this constitutes harmful error. (Doc. 19 at 13). Plaintiff fails to set forth any work limitations associated with Claimant's mental impairments. (*Id.*). Further, Plaintiff fails to cite to any evidence of record that substantiates that Claimant had work limitations due to his alleged mental impairments. The Eleventh Circuit has consistently held that "the claimant bears the burden of proving that [he] is disabled, and consequently, [he] is responsible for producing evidence in support of [his] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). In this case, Plaintiff failed to produce evidence showing that Claimant's mental impairments caused work limitations.

The Court finds that even if the ALJ erred in failing to find Claimant's mental impairments severe at step two of the sequential evaluation, the error was harmless because the ALJ considered all of Claimant's impairments, whether severe or non-severe in determining Claimant's RFC.

### C. Whether the ALJ Was Biased

The final issue raised by Plaintiff concerns the claim that the ALJ was biased against Claimant and Claimant's counsel. (Doc. 19 at 14-21). Plaintiff claims that the ALJ has a "well-established pattern of reversible error in cases where he ignored mental impairments in order to avoid obtaining vocational expert testimony." (*Id.* at 14). Plaintiff also claims that the ALJ included inappropriate correspondence between himself and another attorney in an unrelated matter in the administrative record. (*Id.* at 15). Plaintiff further contends that the ALJ is "embroiled in a conflict with Plaintiff's Counsel such that he is not capable of adjudicating Plaintiff's Counsel's cases in an impartial manner." (*Id.*). In addition, Plaintiff claims that the

ALJ is involved in litigation and disciplinary actions by the Commissioner of Social Security. (*Id.* at 17).

The Commissioner argues that Plaintiff failed to rebut the presumption that the ALJ acted honestly and with integrity in this action. (Doc. 21 at 16). The Commissioner further argues that the ALJ was not required to obtain a vocational expert and his failure to obtain a vocational expert does not evidence bias. (*Id*. at 17).

On this point, the Court notes that the "impartiality of the ALJ is integral to the integrity of the system." *Hinson v. Colvin*, No. 2:14-cv-222-FtM-DNF, 2014 WL 6769341, at *3 (M.D. Fla. Dec. 1, 2014) (quoting *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996)). Nevertheless, courts "start from the presumption that administrative adjudicators, such as ALJs are unbiased." *Id.* (citing *McClure*, 456 U.S. at 195-96)). "[A] claimant challenging this presumption carries the burden of proving otherwise." *Strople v. Colvin*, No. 3:13-cv-1518-J-34MCR, 2015 WL 1470866, at *7 (M.D. Fla. Mar. 31, 2015).

In this instance, the Court finds that Plaintiff has not provided sufficient evidence to demonstrate that the ALJ was biased as to Claimant's case or his counsel. There is insufficient evidence to support Plaintiff's assertion that the ALJ was biased against Claimant for his assertion of mental impairments or for failing to obtain a vocational expert. Moreover, Plaintiff has not shown that the separate litigation pending – that indirectly involved Plaintiff's counsel – influenced the ALJ's decision in this case. Further, even assuming *arguendo* that the ALJ was biased, there is substantial evidence of record that supports the ALJ's decision as to the issues raised by Plaintiff here. Accordingly, the Court declines to remand this case based on Plaintiff's insufficiently supported allegations of bias.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 5, 2017.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties